NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3363-13T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

QUAHEEM JOHNSON,

    Defendant-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> **July 10, 2014**
>
> **APPELLATE DIVISION**

Argued May 28, 2014 — Decided July 10, 2014

Before Judges Sabatino, Hayden and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 08-08-1494.

Gerard H. Breland, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Gaetano T. Gregory, Acting Hudson County Prosecutor, attorney; Mr. Breland, on the brief).

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Blum, on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.S.C. (temporarily assigned)

An indictment charged defendant Quaheem Johnson with various offenses, including murder, felony murder, and armed

robbery, relating to his committing two separate robberies and killing one of the victims. A jury could not reach a unanimous verdict as to those charges but, as to murder and armed robbery, it convicted defendant of uncharged, lesser-included offenses. Despite the jury being deadlocked as to the greater, charged offenses, the trial court accepted the jury's verdict and had it recorded. The State sought thereafter to retry defendant on felony murder and murder,[1] and defendant moved to bar a retrial arguing that double jeopardy principles and the improper termination of his prosecution barred a new trial as to those charges. The trial court agreed with defendant's arguments and granted his motion. We stayed further proceedings and granted the State leave to appeal the trial court's order.

Defendant's circumstances raise a question of first impression: whether a trial court improperly terminates a defendant's prosecution, within the meaning of N.J.S.A. 2C:1-9, by accepting a partial verdict where the jury is deadlocked as to greater, charged offenses, but is unanimous in its finding of guilt as to uncharged, lesser-included offenses. After considering the State's argument in the context of the unusual circumstances revealed by the record, we answer the question in

---

[1] On appeal, the State argues that it seeks to retry defendant only on felony murder.

the affirmative and affirm the trial court's determination that defendant's retrial on felony murder is barred because of the improper termination of his prosecution.[2]

## I.

According to the State's proofs, on April 8, 2008, defendant shot and killed Ramon Francisco Morales while in the course of taking his necklace. Shortly thereafter, and several blocks away, defendant held another victim, Javier Galeas, at gunpoint and took his chain as well. Police responded to the scene and, after ten to fifteen minutes, spotted defendant in the general vicinity of the commission of the crimes. They commanded defendant to stop, but he fled. While being pursued, he pointed a handgun in the direction of one of the officers. As a result, the officer discharged his weapon twice, but missed defendant. The officer eventually apprehended defendant, and both victims' necklaces were found on his person. The police also recovered a gun in a nearby yard, and ballistics tests later confirmed that it was the murder weapon.

Defendant was charged in an indictment with murder, N.J.S.A. 2C:11-3(a) (count one); felony murder, N.J.S.A. 2C:11-

---

[2] Because we agree with the court's determination that defendant's prosecution was improperly terminated, we choose not to address the court's separate determination that defendant's retrial was barred by double jeopardy considerations.

3(a)(3) (count two); armed robbery, as to Morales, <u>N.J.S.A.</u> 2C:15-1(b) (count three); unlawful possession of a weapon, <u>N.J.S.A.</u> 2C:58-4, 39-5(b) (count four); possession of a weapon for an unlawful purpose, as to Morales, <u>N.J.S.A.</u> 2C:39-4(a) (count five); armed robbery, as to Galeas, <u>N.J.S.A.</u> 2C:15-1 (count six); possession of a weapon for an unlawful purpose, <u>N.J.S.A.</u> 2C:39-4(a) (count seven); aggravated assault, as to police officer Jesse Hillburn,[3] <u>N.J.S.A.</u> 2C:12-1(b)(4) (count eight); resisting arrest, <u>N.J.S.A.</u> 2C:29-2(a) (count nine); and possession of a weapon for an unlawful purpose as to Hillburn, <u>N.J.S.A.</u> 2C:39-4(a) (count ten).[4]

Defendant's first trial ended in a mistrial due to jury intimidation. The court conducted a new trial from October 9 to November 9, 2012. The jury deliberated from October 23 to October 25; then, after Hurricane Sandy, which devastated New Jersey on October 29, 2012, it continued deliberations from November 7 to November 9. The original presiding judge became unavailable, so a different judge presided over the last three

---

[3] Hillburn is the officer at whom defendant allegedly pointed the gun.

[4] The offenses are those charged to the jury by the court. The original indictment charged defendant in three other counts with unlawful possession of a weapon, but those charges merged due to the fact that the same weapon was used in all offenses.

days of the jury's deliberations and ultimately received the jury's verdict.

Before charging the jury, the first judge supplied it with a verdict sheet that sequentially followed the counts in the indictment. The verdict sheet contained each of the indicted charges and, where appropriate, the uncharged, lesser-included offenses. It specifically instructed that the lesser-included offenses were not to be considered unless the jury's verdict was "Not Guilty" on the greater, charged offenses.[5] It treated greater, uncharged offenses in the same manner relative to lesser, uncharged offenses — the lesser offense was to be considered only if the verdict was not guilty as to the greater offense. For example, as to count one, murder, the jury was instructed to first consider "purposeful and knowing" murder; then, only if its verdict was not guilty as to murder, the jury could move on to consider aggravated manslaughter. Similarly, the jury was instructed that it must first find defendant not guilty of aggravated manslaughter, before moving on to consider reckless manslaughter.

As to the jury's use of the verdict sheet, the judge initially instructed:

---

[5] The parties agree that there was no issue raised at trial, or now on appeal, relating to defendant's consent to the inclusion of these uncharged offenses.

> Now you all have a copy of the verdict sheet, don't look at it yet though. I'll point it out to you when it's necessary. I mean, I'll — as we go over each charge, I'll direct you to the verdict sheet and — explain it.

The judge then charged the jury with general instructions and followed them with charges as to each offense contained in the indictment, substantially in accordance with the model jury charges. However, unlike the verdict sheet, the judge did not sequentially follow the counts in the indictment. Instead, he first charged count three, first-degree robbery of Morales, followed by the lesser-included offenses of second-degree robbery and theft. Next, the judge charged count two, felony murder. As the judge explained:

> Now I'm going to go to Count 2 . . . . felony murder. The State contends that on April 19th, 2008, while defendant was engaged in the commission of or flight after committing the crime of robbery as charged in Count 3, which is why I defined robbery for you first. . . .
>
> . . . .
>
> You cannot find defendant guilty of felony murder unless you first find him guilty beyond a reasonable doubt of having committed the crime charged in Count 3, robbery. So that's to be your first consideration and again, which is why I gave you robbery first, all right.

Next, the judge charged the jury with count one, murder, and then instructed,[6]

> If . . . you determine the State has not proven beyond a reasonable doubt the defendant purposely or knowingly caused death or serious bodily injury resulting in death, then you must find him not guilty of murder and go on to consider whether the defendant should be convicted of the crimes of aggravated or reckless manslaughter.

While charging the jury with these two lesser-included offenses, the judge told the jury that they were to consider reckless manslaughter only if they were not convinced that defendant committed aggravated manslaughter.

At the conclusion of the court's charge as to reckless manslaughter, the judge stated, "You'll note I gave you the verdict sheet and the details of [the] lesser included [offenses are] there." Afterwards, the judge instructed the jury with the remaining charges following their sequential order in the indictment, but grouping them together where appropriate. However, the judge did not review with specificity or "explain" the verdict sheet which, again, unlike the charge, was arranged sequentially, following the order of the indictment. In the

---

[6]  The court first instructed the jury that it could find defendant guilty if the jurors were satisfied the State proved his guilt beyond a reasonable doubt. The court did not, however, tell the jury that if it found defendant guilty of murder it should skip aggravated and reckless manslaughter and move on to the next count.

judge's only other comments to the jury about the verdict sheet, he stated,

> I've given you the verdict sheet to assist you in . . . your deliberations. The verdict sheet is evidence of nothing. It's simply a document to help you arrange your thoughts relative to deliberations and to reveal what your verdict is in open court.

Thereafter, following three days of initial deliberations and the hurricane-related hiatus, the second judge substituted for the first judge. Two significant incidents occurred involving the jury while the second judge presided over its deliberations.[7] First, the judge had to address the jury's confusion about when it should consider the uncharged, lesser-included offenses about which it was instructed by the first judge. Second, the judge had to deal with a dispute that arose between two jurors.

Specifically, on November 8, the jurors asked the following in a note:

> [W]ith regard to counts that have multiple sections that require a decision on the . . . first part rather, to move to the subsequent sections, do we have to find unanimously guilty or not guilty in order to

---

[7] In fact, the second judge was forced to confront several issues in a trial about which that judge had no familiarity under the extraordinary circumstances created by Hurricane Sandy. We are sympathetic to those circumstances into which the second judge was placed with very little notice.

move to the next section or can we be deadlocked on the first part and move to the second and third section[?]

After reviewing the note with the second judge, both counsel agreed that the jury should be re-instructed to make unanimous findings as to the greater, charged offense in each count, before considering an uncharged, lesser-included offense, if appropriate, in accordance with the verdict sheet's instructions. The second judge disagreed, based on that judge's concern that by so instructing, the court would be directing the jury's deliberations. The second judge ultimately instructed:

> [T]he verdict sheet is not evidence, nor is it law. It is simply a tool that [the first judge] prepared to assist you in your deliberations. <u>You may deliberate about the charges in any order you wish to</u>, the [c]ourt cannot direct your deliberations.
>
> [(Emphasis added).]

The second judge gave that instruction recognizing that the jury could be "deadlocked" as to the greater, charged offense, because "[i]t's happened before in cases, it's something that — that can in fact, occur." The second judge, therefore, never told the jurors that they had to find defendant not guilty of the charged offense before they could consider the uncharged, lesser-included offenses.

Before sending the jury back to continue its deliberations, the second judge also stated,

9

With that I ask you to return to the jury room. You can certainly send out any other questions you wish to and remember, please do not tell me where you stand, whether you are deadlocked or — I'm sorry, whether . . . you stand — where you stand as to each charge.[8]

Later that same day, the court's officer informed the judge and counsel about a dispute between jurors two and eleven, and that juror two was outside the jury room refusing to go back in because she "did not want to be ridiculed anymore." The judge spoke to juror two with counsel present, who informed the judge that she was insulted by more than one other juror "at different points." The judge then sent juror two back to the jury room and brought out juror eleven, who explained that juror two was "refusing to participate or just mak[ing] up stuff that is no way related to the facts that were presented by either side of the case." Juror eleven informed the judge that "we've all agreed that we should take a break and come back and cool off and start over in the morning." The judge sent juror eleven

---

[8] After the jury returned to deliberate, counsel pointed out to the second judge that the judge told the jury not to disclose if it was deadlocked. The judge conceded that was said but the judge believed the statement was already corrected. It was not, although, as we note infra, it was later addressed by the second judge.

back to the jury room and conferred with counsel.[9]  Defendant's

attorney requested a modified <u>Allen/Czachor</u>[10] charge, although

<hr>

[9]  Although not an issue before us, we note that the judge did not question the other jurors about whether the feuding jurors' dispute impacted their deliberations, or give any instructions to the jury about the dispute or take any further action to guarantee the integrity of the deliberations or the safety of the jurors.  <u>See</u> <u>State v. Dorsainvil</u>, 435 <u>N.J. Super.</u> 449, 487 & n.20 (App. Div. 2014) ("When violence intrudes into the deliberative process in any form and to any degree, a trial judge must take immediate action to investigate what occurred, not only to determine whether a defendant's right to a fair and impartial trial has been compromised, but also to ensure the safety and security of all involved.").

[10]  <u>Allen v. United States</u>, 164 <u>U.S.</u> 492, 17 <u>S. Ct.</u> 154, 41 <u>L. Ed.</u> 528 (1896); <u>State v. Czachor</u>, 82 <u>N.J.</u> 392 (1980).  The charge is given to the jury when the court is informed they may be deadlocked.  <u>See</u> <u>State v. Ross</u>, ___ <u>N.J.</u> ___, ___ (2014) (slip op. at 12-14); <u>State v. Figueroa</u>, 190 <u>N.J.</u> 219, 231-39 (2007).  Usually, upon being so notified, a court will charge the jury in accordance with the <u>Model Jury Charge (Criminal)</u>, "Judge's Inquiry When Jury Reports Inability To Reach Verdict" (2013), as follows:

> You have indicated that your deliberations have reached an impasse.  Do you feel that further deliberations will be beneficial or do you feel that you have reached a point at which further deliberations would be futile?  Please return to the jury room to confer, and advise me of your decision in another note.

Then, if the jurors notify the judge they are deadlocked, the judge will instruct them in accordance with <u>Model Jury Charge (Criminal)</u>, "Judge's Instructions On Further Jury Deliberations" (2013),

> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do

(continued)

the jury never informed the court that it was deadlocked. After considering the request, the judge decided not to give the charge but to break for the day.

Before the judge brought the jury into the courtroom, defendant's counsel returned to the issue of the court telling the jury not to inform the court that it was deadlocked. Counsel moved for a mistrial on that basis. The court denied the motion, telling counsel that the court would, however, "remind them" that the jurors should not disclose where they stand in their voting at any point in their deliberations, "[o]f course that doesn't apply to whether or not they're deadlocked." When the judge brought the jury out to dismiss them for the day, the judge in fact told the jury to

> remember . . . if you do send me questions, just to clarify something I said before, I

---

(continued)

> so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are not partisans. You are judges — judges of the facts.

> don't want to know where you stand on any given charge. . . .
>
> But certainly for deadlock, that's a different issue, okay. So I — I think I might have misspoken . . . in that case. If you're deadlocked, I need to know that.

During the rest of the jury's deliberations, the jury never informed the judge it was deadlocked, and the judge never gave the modified <u>Allen/Czachor</u> charge.

Prior to the second judge's subsequently receiving the jury's verdict in open court and having it recorded, the jury sent another note to the court. The note stated that the jurors wanted "all the jury requests [sic] to be polled on each and every count." After conferring with counsel, the judge decided that the court would have the foreperson state the jury's verdict as to a count, do the polling as to that count by asking each juror if his or her individual verdict was guilty or not guilty, then move on to the next count. When the judge brought the jury out to take its verdict the following occurred:

> THE COURT: Good afternoon, Ladies and Gentlemen. I'm aware that you have reached a verdict. Also, I received [a] note which I marked J-22, all of the jurors request to be polled on each and every count and I intend to do so in this regard.
>
> I will ask the foreperson what the verdict was as to each count and then move to each juror and ask whether you — that is your verdict as well.

So would the foreperson please rise. Miss Foreperson, has this jury agreed upon a verdict?

MS. FOREPERSON: Yeah.

THE COURT: You seem hesitant. Well, is the verdict unanimous?

MS. FOREPERSON: Not on all counts.

THE COURT: Not on all counts. All right. Have you reached a verdict on any of the counts?

MS. FOREPERSON: Yes.

The judge then asked counsel if they had any objection to the court proceeding to take the verdicts. The prosecutor had no objection and defendant's attorney deferred to the court's "discretion."

The foreperson then advised the court that the jury did not reach a verdict as to the charged offense of count one, purposeful and knowing murder. The second judge did not poll the jury about its vote on the murder charge. Instead, the second judge immediately inquired as to the uncharged, lesser-included offense of aggravated manslaughter, despite the jury not reaching any verdict as to the greater charged offense of murder.[11] The foreperson advised the judge the jury found

---

[11] At oral argument before us, the prosecutor conceded that defense counsel did not waive his ability to appeal this procedure by not interjecting an objection at that moment.

defendant guilty of aggravated manslaughter. The judge then polled the jurors by asking each of them, "[I]s that your verdict?" Each responded in the affirmative.[12] The judge then moved on to count two, felony murder, and the foreperson informed the court that the jury again did not reach a verdict as to that charge. The judge did not poll the jury but rather moved on to count three, armed robbery. Again, the foreperson informed the judge that the jury did not reach a verdict as to that charge. The judge moved on to the uncharged, lesser-included offense of second-degree robbery, and the foreperson informed the court that the jury found defendant guilty of that charge, and then the judge polled the jury. The judge followed the same process for the remaining counts, and the foreperson advised the court that the jury found defendant guilty of all additional charges, except for counts five, possession of a weapon for an unlawful purpose; eight, aggravated assault for pointing a firearm at Officer Hillburn; and ten, another charge of possession of a weapon for an unlawful purpose.

The verdict sheet reflected the verdict as "deadlocked" for counts one, murder; two, felony murder; three, armed robbery; five, possession of a weapon for an unlawful purpose; eight,

---

[12] It is assumed juror nine did so as well, although the transcript indicates "no audible response recorded."

aggravated assault; and ten, possession of a weapon for an unlawful purpose. The verdict sheet also reflected that, despite being deadlocked on the greater charged offenses, the jury rendered guilty verdicts as to aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), reckless manslaughter, N.J.S.A. 2C:11-4(b)(1),[13] and second-degree robbery, N.J.S.A. 2C:15-1(a)(2), which were all uncharged, lesser-included offenses that the verdict sheet instructed should only be considered if the jury found defendant not guilty of the charged offense.

After the judge received the verdict and was about to discharge the jury, one of the jurors reminded the judge that the jury "wanted to be polled on all of the counts, even the ones that we've not reached a verdict on — the ones that we're deadlocked on. That was the unanimous opinion of the jury." After conferring with counsel, the court ultimately declined to poll the jurors on the undecided counts because "[i]t would be inappropriate for [the court] to delve into how each of [the jurors] voted on counts in which [the jury] was not unanimous."[14] The judge then thanked and discharged the jury.

---

[13]  The foreperson never announced this verdict to the court. It only appeared on the verdict sheet.

[14]  Although not material to our decision in this case, we note our agreement with the second judge's decision to not poll jurors where a verdict was not reached. Polling should only

(continued)

The State subsequently sought to retry defendant for murder and felony murder. Defendant filed a motion to bar a retrial based on 1) double jeopardy, and 2) improper termination of the original prosecution, N.J.S.A. 2C:1-9(d), 1-10(a), 1-10(c). After considering the parties' oral argument, the first judge granted defendant's motion. As explained in the judge's written "Statement of Reasons," the court found that double jeopardy precluded the State from re-trying defendant for felony murder and murder. The court further reasoned that defendant's prosecution had been improperly terminated because the jury was allowed to convict defendant of lesser-included offenses without acquitting him of the greater charges, and a retrial would be prejudicial under the circumstances. As the first judge explained:

> The second trial judge did not respond specifically to the jury question relative to the order in which greater and lesser included offenses must be considered, although the first trial judge did so in [the judge's] instructions to the jury and in [the] verdict form. The second trial judge gave a response as it relates to separate counts in the indictment. That is, the jury can deliberate as to separate counts in the indictment in any order they wish. This did not answer the jury's specific question, although it is unknown

(continued)
occur when a verdict is reached. R. 1:8-10; State v. Milton, 178 N.J. 421, 432-33 (2004).

whether the jury may have believed otherwise.

The second trial judge then accepted verdicts on the lesser-included offenses without the defendant being acquitted of the greater offense. Rather than acquitting the defendant on the counts of Murder, Armed Robbery, and Felony Murder, the jury informed the [j]udge that they could not reach a verdict. Despite this, the jury found the defendant guilty of Aggravated Manslaughter and Robbery; however, those offenses should not have been considered since the jury did not acquit the defendant of the greater offenses, they simply failed to reach a verdict.

Following Cooper,[15] if the jurors are split between the greater charge and the acquittal, the result is a "hung" jury. Nevertheless, since the defendant has already been found guilty of Aggravated Manslaughter and Robbery, (although the evidence overwhelmingly supported a murder conviction), the defendant will be prejudiced if as a result of a "hung jury" on the greater offenses, he is forced to go back to trial to face Felony Murder and Murder counts. The defendant would find himself facing a trial where the State is arguing elements and using evidence for charges for which he has already been found guilty. The defendant should not have to suffer because Cooper, supra, 151 N.J. at 366, was not specifically followed. A retrial would certainly prejudice the defendant.

---

[15] State v. Cooper, 151 N.J. 326, 366 (1997) ("Ordinarily, juries may not consider lesser-included offenses until they have acquitted of the greater offense.").

The court subsequently denied the State's motion for a stay of the proceedings, and the State then filed an emergent application to appeal the order barring retrial and denying a stay of the proceedings. Defendant did not move for leave to cross-appeal any of the trial court's rulings. Sentencing has been stayed, and no judgment of conviction has been entered.

## II.

The State contends that the court's granting of defendant's motion to bar his retrial as to felony murder constituted a misapplication of the law. Our review of "the legal conclusions and analysis of the trial court . . . is plenary." State v. Harris, 211 N.J. 566, 578-79 (2012) (citing State v. Handy, 206 N.J. 39, 45 (2011)). We therefore review the judge's legal conclusions de novo. State v. Harris, 181 N.J. 391, 420-21 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005). Applying this standard here, we agree with the trial court that the second judge improperly terminated defendant's prosecution, thereby preventing the State from retrying him on any of the charges upon which the jury was "deadlocked." N.J.S.A. 2C:1-9(d), 1-10(a), 1-10(c).

Ordinarily "double jeopardy . . . do[es] not prohibit retrial of a defendant when a prior prosecution for the same offense has ended in mistrial attributable to the inability of

19                                                          A-3363-13T3

the jury to agree on a verdict," because "the jeopardy to which the defendant is exposed is considered a continuation of original jeopardy, which was not terminated by the mistrial." State v. Abbati, 99 N.J. 418, 425-26 (1985). However, a successive prosecution for the same offense is barred if the former prosecution was improperly terminated, N.J.S.A. 2C:1-9(d), "and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated." N.J.S.A. 2C:1-10(c). Termination of a prosecution is improper "if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn." N.J.S.A. 2C:1-9(d).[16]

---

[16] N.J.S.A. 2C:1-9(d) states that termination is not improper if,

> (1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination[;]
>
> (2) The trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed[; or]
>
> (3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

As we have previously explained,

> Under the New Jersey Code of Criminal Justice, a prosecution of a defendant is barred by a former prosecution for the same offense upon the same facts when the former prosecution was improperly terminated. N.J.S.A. 2C:1-9d. However, a termination is not considered improper where "[t]he trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed." N.J.S.A. 2C:1-9d(2). The trial court is vested with "broad discretionary authority" to declare a mistrial due to a deadlocked jury and its decision to do so may be reversed only for an abuse of discretion.
>
> [State v. Paige, 256 N.J. Super. 362, 381 (App. Div.), certif. denied, 130 N.J. 17 (1992) (citations omitted).]

We are satisfied that the second judge's acceptance of a partial verdict constituted a mistaken exercise of the court's discretion resulting in the improper termination of defendant's prosecution. Generally, a matter is not terminated until the jury's verdict is final, which occurs when "'the deliberations are over, the result is announced in open court, and no dissent by a juror is registered.'" State v. Rodriguez, 254 N.J. Super. 339, 348 (App. Div. 1992) (quoting United States v. Rastelli, 870 F.2d 822, 834 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989)). Where the court determines that, in a criminal action, the jury has not reached a unanimous verdict, "the jury may be directed to retire for further

deliberations or discharged." R. 1:8-10. A judge has discretion to require further deliberations after a jury has announced its inability to agree, Fiqueroa, supra, 190 N.J. at 235, "but exercise of that discretion is not appropriate 'if the jury has reported a definite deadlock after a reasonable period of deliberations.'" State v. Adim, 410 N.J. Super. 410, 423-24 (App. Div. 2009) (quoting Czachor, supra, 82 N.J. at 407). Under those circumstances, a mistrial may be declared which "'is not a judgment or order in favor of any of the parties' and 'lacks the finality of a judgment and means that the trial itself was a nullity.'" State v. Miller, 382 N.J. Super. 494, 503 (App. Div. 2006) (quoting State v. Cruz, 171 N.J. 419, 426 (2002)); see also State v. Hale, 127 N.J. Super. 407, 412 (App. Div. 1974).

In a case involving multiple counts to an indictment, a trial court may accept a partial verdict "specifying the count or counts as to which [the jury] has agreed. R. 3:19-1(a). "[T]he defendant . . . may be tried again on the count or counts as to which it has not agreed." Ibid. "[T]rial courts possess the discretion to accept [partial] verdicts absent a showing of prejudice to the defendant." State v. Shomo, 129 N.J. 248, 257 (1992).

> [P]artial verdicts may be warranted, for
> example, when the jury has deliberated at

length, when the charges against a defendant are rooted in unrelated facts, when the court has reason to be concerned that a juror may become ill before deliberations conclude, when there is risk of taint to the jury's decision-making process, or when the State has indicated its intention to dismiss the unresolved counts.

[Id. at 257-58.]

A partial verdict may be considered final when,

a jury was properly instructed, and when the verdict was received in open court, recorded, and, if requested, confirmed by a polling of the jurors. Under those conditions, an interim partial verdict will be subject to impeachment in the same limited circumstances that warrant challenge of a final verdict rendered at the end of jury deliberations.

[Id. at 259 (emphasis added).]

We have approved the acceptance of a partial verdict and the defendant's retrial where, for example, a jury acquitted a defendant of a greater, charged offense but could not reach a verdict on the uncharged, lesser-included offense. State v. Ruiz, 399 N.J. Super. 86, 99 (App. Div. 2008). However, "[b]ecause of the potential compromise to either a defendant's or government's interests, and the risk of interfering with jury deliberations, we strongly discourage routine use of partial verdicts." Shomo, supra, 129 N.J. at 257 (emphasis added).

Before accepting either a complete or partial verdict which includes counts upon which the jury is "hung" or "deadlocked," a

court must determine if the deadlock is "intractable." Ross, supra, __ N.J. at __ (slip op. at 15) (quoting Figueroa, supra, 190 N.J. at 237). If, after considering "such factors as the length and complexity of [the] trial and the quality and duration of the jury's deliberations," id. at __ (slip op. at 12) (quoting Czachor, supra, 82 N.J. at 407), the court is not satisfied that the deadlock is "intractable," the court should instruct the jury with the modified Allen/Czachor charge and direct the jury to continue its deliberations. Id. at __ (slip op. at 13-15.); Czachor, supra, 82 N.J. at 407. As the Court recently noted,

> In authorizing continued deliberations following a deadlock and an instruction, this Court declined to hold in Czachor, supra, that an initial impasse signals the end of meaningful deliberations. 82 N.J. at 404-06 (directing trial courts, in appropriate circumstances, to charge deadlocked jury to continue deliberations). To the contrary, the Czachor charge instructs jurors to consider the viewpoints of other jurors with an open mind. See Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013). In short, Czachor contemplates that a previously deadlocked jury can conduct fair and effective deliberations notwithstanding an earlier impasse.
>
> [Ross, supra, __ N.J. at __ (slip op. at 28).]

A declaration of a mistrial is then warranted only when the jury "signal[s] an intractable divide," id. at __ (slip op. at 15), and the court is satisfied that "the jury has made a good-faith effort to reach a sustainable verdict" after the court first considers "the duration of the deliberations balanced against the length of the trial and the complexity of the proofs." Dorsainvil, supra, 435 N.J. Super. at 481.

In this case, the second judge received the partial verdict in open court and recorded it even though the jury informed the court, for the first time, at the outset of the verdict proceedings, that it had not reached a verdict as to the first count. The second judge never made further inquiry as to the nature of the deadlock, nor did the judge perform the required analysis to determine whether to proceed to deliver the modified Allen/Czachor charge.

Also, we are satisfied that there is a substantial likelihood that the verdict was the result of the second judge's erroneous instructions to the jurors about the manner and sequence in which they could consider the uncharged, lesser-included offenses. See Cooper, supra, 151 N.J. at 366.[17] The

---

[17] As the Supreme Court explained in Cooper, supra, 151 N.J. at 366 (citations omitted),

(continued)

A-3363-13T3

fact that the verdict sheet correctly advised the jurors that they could not consider the uncharged, lesser-included offenses unless they reached a verdict of not guilty on the greater charge did not cure the problem. "A verdict sheet is intended for recordation of the jury's verdict and is not designed to supplement oral jury instructions." State v. Gandhi, 201 N.J. 161, 196 (2010). Therefore, "[a] jury verdict must be guided by correct legal instructions and 'erroneous instructions on matters material to the juror's deliberations are presumed to be reversible error.'" Dorsainvil, supra, 435 N.J. Super. at 480 (quoting State v. Allen, 308 N.J. Super. 421, 431 (App. Div. 1998)). While, as the first judge correctly noted, the second judge's instructions addressed the order in which the jury could consider the various counts of the indictment,[18] it did not

---

(continued)

      Ordinarily, juries may not consider lesser-included offenses until they have acquitted of the greater offense. The rationale behind the sequential ordering of greater and lesser-included offenses is that the jury must convict of the crime supported by the evidence, as opposed to compromising between jurors who want the greater charge and jurors who want to acquit. Thus, if jurors are split between the greater charge and acquittal, the result is a hung jury.

[18] That instruction contradicted the first judge's original instruction that the jury should consider the robbery charges before considering the felony murder charge.

address the manner the jurors should consider the uncharged, lesser-included offenses.

We are satisfied that the cumulative effect of 1) the court's failure to properly instruct the jury about the limited circumstances in which it would be permitted to consider the uncharged, lesser-included offenses, 2) its failure to insist on there being a unanimous not guilty verdict before taking the verdict on the uncharged, lesser-included offenses, 3) its failure to review the verdict sheet with the jurors, combined with 4) the apparent confusion caused by the court's initially telling the jury to not inform the court if it was deadlocked should have resulted in the court not accepting the jury's verdict as final when the court learned the jury was deadlocked. Rather than proceeding to accept improper, partial verdicts, the court should have considered the extent of the jury's deadlock and reinstructed the jury about the proper manner to consider the uncharged offenses. It should then have directed them to continue their deliberations. We recognize the second judge's well-intentioned desire to refrain from interfering unduly in the jury's deliberations. However, the second judge nonetheless strayed too far from case law disfavoring partial verdicts in the judge's deference to the jury.

Because of these numerous critical errors and omissions, the jury was allowed to reach verdicts on charges in specific counts that they should not have even considered had they been instructed properly. The erroneous instructions tainted the jury's consideration of all of the unresolved charges, including felony murder, because, under these circumstances, not only was defendant's prosecution "improperly terminated," N.J.S.A. 2C:1-9(d), but there was also a potential that defendant's right to a unanimous jury verdict was denied, Shomo, supra, 129 N.J. at 258. To allow a retrial on felony murder in this case would be a clear miscarriage of justice.

Affirmed. Remanded for sentencing and the entry of a judgment of conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION