**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2686-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUAHEEM JOHNSON, a/k/a
DANTE JOHNSON, DEREK
SMITH, DONTAE JOHNSON,
and SCOOBY,

    Defendant-Appellant.

_____

Submitted April 20, 2020 – Decided July 10, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 08-08-1494.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Following his indictment on one count of first-degree murder – purposely/knowingly, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); one count of first-degree felony murder – commission of crime, N.J.S.A. 2C:11-3(a)(3) (count two); two counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts three and six); three counts of second-degree unlawful possession of weapon – handgun, N.J.S.A. 2C:39-5(b) (counts four, seven and eleven); three counts of second-degree possession of weapon for unlawful purpose – firearms, N.J.S.A. 2C:39-4(a) (counts five, eight and twelve); one count of fourth-degree aggravated assault with firearm, N.J.S.A. 2C:12-1(b)(4) (count nine); and one count of third-degree resisting arrest – purposely, N.J.S.A. 2C:29-2(a) (count ten), a jury found defendant Quaheem Johnson guilty of first-degree aggravated manslaughter on count one, as a lesser included offense of first-degree murder; second-degree robbery on count three, as a lesser included offense of first-degree robbery; and on counts four, six, eight and ten.[1] The trial judge granted defendant's motion to bar a retrial on counts two, five, nine and twelve on which

---

[1] We refer to the counts as they were originally numbered in the indictment, and as utilized in the judgment of conviction.

2                                                           A-2686-18T1

the jury was deadlocked.[2]  We affirmed his conviction on direct appeal.  State v. Johnson, No. A-1368-14 (App. Div. July 18, 2017).  The Supreme Court denied defendant's petition for certification.  State v. Johnson, 232 N.J. 100 (2018).

Defendant appeals from the order denying his subsequent petition for post-conviction relief (PCR) without an evidentiary hearing, arguing:

> POINT I
>
> DEFENDANT'S PETITION FOR [PCR] SHOULD NOT BE BARRED BECAUSE THE CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE AN INTERLOCUTORY APPEAL ON DENIAL OF HIS MOTION TO RECUSE THE JUDGE INVOLVED INACTION WHICH WAS NOT PART OF THE RECORD FOR APPELLATE REVIEW.
>
> POINT II
>
> DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL ENTITLING HIM TO [PCR], OR AN EVIDENTIARY HEARING, ON THE ISSUES OF FAILURE TO EMPLOY AN EXPERT TO TESTIFY ON IDENTIFICATION, FAILURE TO CONSULT A BALLISTICS EXPERT, FAILURE TO FILE A MOTION FOR A CHANGE OF VENUE, AND FAILURE TO FILE AN INTERLOCUTORY APPEAL ON DENIAL OF DEFENDANT'S MOTION TO RECUSE THE JUDGE.

---

[2]  We granted leave to appeal and affirmed the trial judge's ruling.  State v. Johnson, 436 N.J. Super. 406, 426 (App. Div. 2014).

(A) APPLICABLE LAW.

(B) COUNSEL WAS INEFFECTIVE FOR FAILING TO EMPLOY THE EXPERT IN IDENTIFICATION USED IN DEFENDANT'S FIRST TRIAL.

(C) COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND CONSULT A BALLISTICS EXPERT.

(D) COUNSEL WAS INEFFECTIVE FOR FAILING [TO] FILE A MOTION FOR A CHANGE OF VENUE.

(E) COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE AN APPEAL ON THE DENIAL OF HER MOTION TO RECUSE THE TRIAL JUDGE FROM PRESIDING OVER DEFENDANT'S CASE.

POINT III

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ENTITLING HIM TO [PCR] OR A NEW APPEAL FOR FAILURE OF COUNSEL TO ARGUE THE INCLUSION OF THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER TO THE JURY, AND FAILURE TO CHALLENGE THE STATE'S WITNESSES' TESTIMONY REGARDING DEFENDANT'S TEARDROP TATTOO.

(A) APPLICABLE LAW.

(B) APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO APPEAL THE [JUDGE'S] INCLUSION OF MANSLAUGHTER AS A

LESSER-INCLUDED OFFENSE TO THE CHARGE OF MURDER.

(C) APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO APPEAL THE STATE'S REDIRECT EXAMINATION OF . . . DEFENDANT REGARDING HIS TEARDROP TATTOO.

Absent an evidentiary hearing, we review both the factual inferences drawn by the PCR judge from the record and the judge's legal conclusions de novo. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. Under those standards, we determine defendant failed to establish that either his trial or appellate counsel was ineffective. Hence, we affirm.

I.

Defendant argues that his trial counsel was ineffective because she failed to file an interlocutory appeal of the denial of his motion to recuse the initial trial judge.[3] Defendant further contends that "[e]ven if this court was to find th[is] issue . . . could have been brought in a prior proceeding," it "could not have been properly adjudicated on direct appeal" because this claim "lies outside the record[.]"

We agree with the PCR judge's determination that this claim was procedurally barred under Rule 3:22-4(a) which bars a defendant from employing PCR to assert a claim that could have been raised at trial or on direct appeal. See State v. Nash, 212 N.J. 518, 546 (2013) ("A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal[.]"). The Rule provides:

> Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds: (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (2) that enforcement

---

[3] After a delay in the trial caused by Superstorm Sandy, see Johnson, 436 N.J. Super. at 411, trial resumed; another judge presided over the jury deliberations and took the verdict because the initial judge was unavailable.

A-2686-18T1

of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or (3) that denial of relief would be contrary to . . . the Constitution of the United States or the State of New Jersey.

[R. 3:22-4(a).]

Although, as defendant contends, the reason trial counsel did not file an interlocutory appeal is not apparent from the record, the conduct of the trial judge that precipitated defendant's motion was. In his merits brief, defendant avers:

> Defense counsel expressed what she perceived as a negative attitude toward her efforts in developing a case for her client. Furthermore, she conveyed to the trial judge that she felt pressured to proceed. She pointed out to the trial [judge] a few examples of bias[,] including the lack of opportunity to file a motion for judgment of acquittal, and the [judge's] failure to hold a jury charge conference. Defendant submits that under the circumstances, counsel's failure to file an interlocutory appeal was ineffective assistance.

Defendant later concedes in his brief, "the record demonstrated unnecessary hostility toward the defense by the trial judge." In that the record set forth the

A-2686-18T1

grounds for defendant's recusal argument, it could have been raised on direct appeal. As it was not, it is barred.[4]

Substantively, defendant's argument lacks merit. The trial judge's "negative attitude" was never evident to the jury. The record shows all of the alleged "hostility" took place outside of the jury's presence. Thus, defendant did not establish the second Strickland-Fritz prong because no prejudice befell defendant. Even defendant admits in his merits brief, "[i]t is unclear what effect the repeated comments by the assistant prosecutor and the [judge] had on the jury's perception of the defense's credibility."[5]

Moreover, we agree with the PCR judge "that the trial judge's occasional frustration with defense counsel [did] not amount to hostility toward [defendant], or bias in favor of the prosecution, sufficient to justify recusal." Indeed, the record belies any acrimony between trial counsel and the judge. In a wide-ranging colloquy outside the jury's presence, this exchange exemplifies their relationship and explains why defendant's argument is meritless:

> THE COURT: It may be your first trial, okay, but you
> have appeared in front of me countless times. You have

---

[4] Defendant does not argue appellate counsel was ineffective for failing to raise this issue.

[5] The prosecutor's comments are not in issue on appeal. Even so, any argument about them should have been raised on direct appeal. See R. 3:22-4(a).

provided written summations of law which are, on a scale of [one] to [ten], a [twelve].  You know what you're doing, okay?

[TRIAL COUNSEL]:  I do, Judge.

THE COURT:  The mere fact that this is your first physical presence --

[TRIAL COUNSEL]:  And you've been very fair.

THE COURT:  -- in this courtroom --

[TRIAL COUNSEL]:  Yeah.  I want to say that, too. Let me be very clear for Your Honor's sake.  Day one of this trial I turned to my client and I told him, you see what I said, because I refused to allow him to appeal Your Honor's recusal order on that motion.  And I did that because I knew that Your Honor would give us fair rulings, and I think that you have given me a lot of latitude, probably because this is my first trial.

When trial counsel told the judge, "I did get you mad, probably for good reason and for very logical reasons," the judge replied, "I don't get mad.  I don't get mad."  Moreover, the remarks complained of did not express bias against defendant.  There is no evidence the judge's displeasure, at times, with counsel's actions impacted on any of the judge's rulings.  See State v. Leverette, 64 N.J. 569, 571 (1974).

Contrary to defendant's argument, the trial judge did not foreclose defendant from making a motion for a judgment of acquittal.  He merely required

9

the motion be made at a different time because the judge did not want to keep the jury, who had been waiting in what the judge described as "that claustrophobic room back there . . . for half an hour," waiting after defense counsel was tardy in reporting to court. The judge invited the motion to be made at a later time that did not require additional wait-time by the jury, a decision well within the judge's discretion under N.J.R.E. 611(a). During the wide-ranging colloquy to which we just referred, the assistant prosecutor asked trial counsel if she ever made the motion. Although some of the record is unintelligible, it is evident the judge invited the motion to be made while the jury was deliberating.

Defendant's contention that the judge failed to hold a charge conference is mistaken. As the PCR judge noted, both counsel and the trial judge had an extensive discussion about the jury charge, particularly the identification instruction, prior to summations, satisfying the mandate of Rule 1:8-7(b).

And, again, even if recusal was warranted by the trial judge's actions, we discern no prejudice suffered by defendant. Counsel did not make the motion after all the evidence was presented, R. 3:18-1, or after the return of the verdict, R. 3:18-2, to the second trial judge. Nor was or is there any objection to the judge's instruction. Defendant did not meet the second Strickland-Fritz prong.

## II.

Defendant contends trial counsel was ineffective for failing to reemploy an eyewitness identification expert who testified at defendant's first trial.[6] The expert opined the identification by the only witness to identify defendant was: the product of cross-racial identification and the suggestive show-up at which defendant was identified; and influenced by the witness's focus on the gun used by the robber and the brevity—less than one minute—of the robbery. Defendant argues this "testimony was crucial because it brought into serious question the witness's identification, given that there was no other corroborating testimony available," noting the other victim of the robbery identified another man despite the inclusion of defendant's photograph in the array she viewed.

Of course, the factors analyzed by the expert are some of the same factors our Supreme Court deemed essential to a jury's consideration of eyewitness testimony. State v. Henderson, 208 N.J. 208, 302 (2011). Henderson, however, was decided between the end of defendant's first trial and the beginning of the second trial.

The trial judge adhered to Henderson, and gave a thorough and complete charge regarding eyewitness identification, addressing all factors defendant

---

[6] Defendant's first trial ended in a mistrial.

A-2686-18T1

claims to which the expert could have testified, including: cross-racial identification, weapon focus, duration of the event, and the suggestive nature of the show-up. Expert testimony was not required, therefore, to bring these issues to the jury. As our Supreme Court recognized, although expert testimony will, in some cases, aid a jury,

> [w]e anticipate . . . that with enhanced jury instructions, there will be less need for expert testimony. Jury charges offer a number of advantages: they are focused and concise, authoritative (in that juries hear them from the trial judge, not a witness called by one side), and cost-free; they avoid possible confusion to jurors created by dueling experts; and they eliminate the risk of an expert invading the jury's role or opining on an eyewitness' credibility.
>
> [Id. at 298.]

We further note, trial counsel effectively cross-examined the eyewitness regarding the aspects of the identification to which the expert had testified. She told the jurors in summation that "as a matter of law you need to consider how identification procedures were conducted. And that's why in painstaking detail I belabored the State's witnesses" about the eyewitness's identification. Additionally, she referenced the "very lengthy instruction from [the trial judge] about those identification procedures," in delineating the reasons why the eyewitness's identification was flawed:

Think about the jury instruction in relation, okay, to what the judge is going to instruct you about. He's going to give you a lot of other things to consider about eyewitness identification still. He's going to tell you that it must be scrutinized carefully. Please do it. He's going to tell you human memory is not foolproof. Please . . . recognize that. Recognize all of the things that the judge is going to ask you to recognize. He's going to ask you to think about the witnesses' opportunity to view the perpetrator and the degree of attention, stress, weapon focus, competence and accuracy. I asked [a detective] whether anyone asked [the victim who identified defendant] how sure he was, okay, because we heard about how sure [the victim who did not identify defendant] was, okay, because [another detective] did her job and said how sure are you. Hundred percent, [the victim who did not identify defendant] said. There's nothing to show how sure [the victim who identified defendant] was.

A trial counsel's "decision concerning which witnesses to call to the stand is 'an art,' and a [judge's] review of such a decision should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 689, 693). The Court, synopsizing the familiar standards, cautioned that we

"must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997). Because of the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

13

that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.

In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

[Id. at 319 (alteration in original).]

According the presumption that counsel's conduct fell within the range of reasonable professional assistance, ibid., and adhering to the tenet that "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial," State v. Castagna, 187 N.J. 293, 314 (2006), we determine defendant has not demonstrated trial counsel's failure to call the expert provided a different outcome. Counsel well-highlighted the factors the expert would have covered, and the jury charge fully explained how the jury was to consider the evidence. Moreover, in our prior decision, we reviewed the plethora of evidence against defendant:

According to the State's proofs, on April 8, 2008, defendant shot and killed Ramon Francisco Morales while in the course of taking his necklace. Shortly thereafter, and several blocks away, defendant held another victim, [who later identified defendant], at gunpoint and took his chain as well. Police responded to the scene and, after ten to fifteen minutes, spotted defendant in the general vicinity of the commission of the crimes. They commanded defendant to stop, but he fled. While being pursued, he pointed a handgun in the direction of one of the officers. As a result, the officer discharged his weapon twice, but missed defendant. The officer eventually apprehended defendant, and both victims' necklaces were found on his person. The police also recovered a gun in a nearby yard, and ballistics tests later confirmed that it was the murder weapon.

[Johnson, 436 N.J. Super. at 410-11.]

Thus, defendant failed to show that the expert, if called, would have changed the verdict. Trial counsel's decision not to call the expert was not ineffective.

### III.

We also see no merit in defendant's argument that trial counsel was ineffective for failing to investigate and consult a ballistics expert to counter the State's firearms and toolmark identification expert's testimony that the bullets recovered from the murder victim's body matched the gun the State claimed defendant discarded.

15

When, as in this case, a defendant claims that his or her trial attorney "inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid.; see also State v. Porter, 216 N.J. 343, 356-57 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing). In other words, a defendant must identify what the investigation would have revealed and demonstrate the way the evidence probably would have changed the result. Fritz, 105 N.J. at 64-65.

Defendant has not proffered a report, affidavit or certification from any expert that would have countered the State's evidence. He has failed to establish the second prong of that test with regard to his arguments; that is, he has not demonstrated a "reasonable probability" that counsel's purported deficient performance affected the outcome. See id. at 58.

Additionally, under the same lens we described in analyzing defendant's argument regarding the identification expert, we discern nothing that established the outcome of the trial would have been different if an opposing expert was

16                                                              A-2686-18T1

called, or that overcomes the presumption that counsel's performance was adequate. As the PCR judge observed, "[t]rial counsel engaged in a lengthy voir dire, during which she asked [the expert] many questions concerning both his methodology and his qualifications to testify," and objected to his testimony. The trial judge observed trial counsel "went at length" in her voir dire of the expert—some twenty minutes. Any challenge to the trial judge's admission of the expert's testimony is barred here under Rule 3:22-4(a).

IV.

We reject defendant's argument that trial counsel was ineffective for failing to move for a change of venue for the same reasons the PCR judge set forth in her written decision. The PCR judge's careful analysis of the impact of pretrial publicity and one juror's refusal to return for service justified her findings that the presumption of prejudice was not warranted, and there was no actual prejudice. See State v. Biegenwald, 106 N.J. 13, 32-33 (1987). There is no evidence any of the jurors were influenced by the media or by any other outside influences. Defendant has failed to identify any juror who should have been excused because of an inability to be fair or impartial, or establish that the jury voir dire did not result in an impartial jury.

We also observe the jurors were instructed not to read any articles related to the trial and not to otherwise discuss the trial. The trial judge warned the jurors:

> Your deliberation should be based on the evidence in the case without any outside influence or opinion of relatives or friends. Additionally, I must instruct you not to read any newspaper articles pertaining to this case. More likely than not there's going to be newspaper cover of this case. Okay? It's probably going to happen. But you're instructed to completely avoid reading or listening to any newspaper or media accounts, or listening to anyone else discuss them or talk about them.

The jury is presumed to have followed that instruction. See State v. Loftin, 146 N.J. 295, 390 (1996) ("That the jury will follow the instructions given is presumed.").

V.

Turning to defendant's two claims of ineffective assistance of appellate counsel, we use the same Strickland-Fritz two-prong test that applies to ineffective assistance of trial counsel claims. State v. Harris, 181 N.J. 391, 518 (2004).

Defendant first argues appellate counsel should have argued the trial judge erred by including manslaughter as a lesser included offense of murder because

"the evidence presented by the State could only have been used to establish he acted purposefully."

"[A] trial [judge] has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361 (2004). "If neither party requests a charge on a lesser-included offense, the [judge] must sua sponte provide an instruction 'when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense.'" State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)).

No one witnessed the actual shooting. A witness who saw the aftermath testified the victim was apparently alive after he was shot; the witness saw him rolling on the ground as the shooter walked away. The State alleged the shooting occurred during a robbery. Considering that no single shot killed the victim, which would be more indicative of a purposeful or knowing murder, the trial judge made an observation that could have very well have been made by the jury: "Who knows why the gun went off, who knows why -- it could have been a number of reasons, okay and . . . the case law is pretty clear that I have to give lesser includeds and I'm giving them lesser includeds."

19

The trial judge simply followed the mandate of our Supreme Court: "[W]here the facts on record would justify a conviction of a certain charge, the people of this State are entitled to have that charge rendered to the jury[.]" State v. Garron, 177 N.J. 147, 180 (2003) (quoting State v. Powell, 84 N.J. 305, 319 (1980)). Tellingly, the jury found defendant guilty of the lesser-included offense of aggravated manslaughter.

That verdict obviated any prejudicial impact the inclusion of the manslaughter instruction may have had. As we recognized in our prior opinion, the initial trial judge instructed "the jury that they were to consider reckless manslaughter only if they were not convinced that defendant committed aggravated manslaughter." Johnson, 436 N.J. Super. at 413. Although the second trial judge told the jury it could consider the separate counts in the indictment "in any order" it wished, id. at 414, 419-20, the judge

> did not respond specifically to the jury question relative to the order in which greater and lesser included offenses must be considered, although the first trial judge did so in [the judge's] instructions to the jury and in [the] verdict form. The second trial judge gave a response as it relates to separate counts in the indictment.
>
> [Id. at 419 (alterations in original).]

The jury, therefore, never considered the manslaughter charge that sequentially followed the aggravated manslaughter charge as a lesser-included offense in the same count. Defendant was not prejudiced by the inclusion of the manslaughter offense.

Defendant's final argument avers appellate counsel was ineffective for failing to challenge that portion of the redirect examination of the arresting officer, when the assistant prosecutor asked him "to step off the stand, approach . . . defendant, and identify if there were any teardrop tattoos on the side of his face." Defendant claims the redirect examination exceeded the scope of cross-examination, and "the issue of tattoos, especially teardrop tattoos, was highly prejudicial and was offered for the express purpose to demonstrate to the jury defendant was a bad person, and not for reasons of identification," because "[i]t is well-known that teardrop tattoos may signify gang membership and is an indication of prior bad acts including murder."

The first question the assistant prosecutor asked on redirect examination was if the officer noticed "anything about [defendant's] face, whether there were any tattoos or anything of that nature," when the officer apprehended him. The officer replied he did not know. Following trial counsel's sidebar objection that the question was outside the scope of his cross-examination because he "never

asked [the officer] about that,"[7] the assistant prosecutor asked the officer to "come off the stand" to look at defendant, asking, "[d]o you see . . . what appear[s] to be teardrop markings on either side of [defendant's] face?" The officer replied affirmatively. When asked if he "saw that on his face" on the date of defendant's arrest, he said he could not recall.

During colloquy with the judge on the next trial date, trial counsel agreed she had brought up the tattoos, and asked "the jury [during the trial] to look at [defendant] . . . [w]ith respect to what the probative value of his having tattoos almost everywhere on his person is in this case, an identification case, to say the very least, since moment one." Trial counsel said "the probative value of asking a jury to look at the fact that he has tattoos almost all over his body is certainly - - it's relevant[.]" Trial counsel agreed with the judge's observation that counsel "kept bring[ing] tattoos up."

In summation, trial counsel emphasized that no witness "identified a man who had tattoos." She rhetorically asked, "[y]ou think if I opened on that and

---

[7] Contrary to defendant's contention in his merits brief that the trial judge "sustained the objection and allowed [the officer] to approach . . . defendant," the record does not reflect any further sidebar colloquy after counsel stated his objection.

there was evidence that my client didn't have tattoos on the night in question the State would introduce that?"

Trial counsel's concern was the prejudicial impact of highlighting the teardrop tattoos. The judge prepared a limiting instruction, which trial counsel accepted.

While we look askance at the prosecution's focused question on defendant's teardrop tattoos, the trial judge limited the jury's use of that testimony to the issue of identification and forbade the jury from drawing any inference from the tattoos other than that limited purpose:

> Furthermore, there has been testimony regarding defendant['s] . . . tattoos on his face. An officer was asked to step down . . . and look at [defendant's] face.
>
> This question became admissible because [trial counsel] inquired of the witnesses whether any descriptions of the perpetrator's face included the tattoos.
>
> The mere fact that a person or this defendant for that matter has tattoos . . . or body art for that matter should not cause you to drawn any inference whatsoever about that person.
>
> First of all, there's no evidence before you as to whether -- as to the date when [defendant] had the tattoo done. Secondly, tattoos or body art, whatever you want to call it are very commonplace, particularly in today's younger generation, not necessarily mine, but the younger generation.

23

My generation, perhaps some of you my age and older may have associated tattoos in the past with sailor[s] like I said before or bad guys in movies. This is 2012 and that's a completely and utterly ridiculous association today.

Societies today and younger generation, body art just are very, very commonplace, so particularly again in -- youth and therefore absolutely no inference should be drawn, discussed or deliberated by you relative to [defendant's] body art, okay, other than in the context of identification.

Not only is the jury presumed to have followed that instruction, trial counsel in summation stated, "[t]he judge is going to give you an instruction, an instruction that he already gave you after [the arresting officer] was traipsed down from the witness stand. Listen to that instruction. That's all I'm going to say." She nonetheless continued,

[t]he judge is going to ask you not to infer anything nefarious based upon any tattoos, whether or not [the assistant prosecutor] traipsed [the arresting officer] over to talk about teardrop tattoos in particular. The judge is going to . . . give you an instruction regarding the tattoos. Listen to it.

Any prejudice engendered by the brief, improvident question by the assistant prosecutor was ameliorated by the instruction. As the PCR judge observed, "regardless of which party opened the door to the evidence of [the

facial] tattoos, such evidence was considered only for the purposes of identification."

Appellate counsel was not ineffective for failing to raise those issues, neither of which had merit.

## VI.

We conclude defendant has failed to establish a prima facie case warranting an evidentiary hearing. "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997). Defendant failed to meet that threshold. See State v. Preciose, 129 N.J. 451, 462-63 (1992); R. 3:22-10(b). As such, an evidentiary hearing was properly denied.

To the extent not addressed here, defendant's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION