NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1368-14T2
STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

QUAHEEM JOHNSON, a/k/a
DANTE JOHNSON, a/k/a
DEREK SMITH, a/k/a SCOOBY,

 Defendant-Appellant.
________________________________________________________________

 Argued March 21, 2017 – Decided July 18, 2017

 Before Judges Koblitz, Rothstadt and
 Sumners.

 On appeal from the Superior Court of New
 Jersey, Law Division, Hudson County,
 Indictment No. 08-08-1494.

 Peter T. Blum, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender,
 attorney; Mr. Blum, of counsel and on the
 briefs).

 Eric P. Knowles, Assistant Prosecutor,
 argued the cause for respondent (Esther
 Suarez, Hudson County Prosecutor, attorney;
 Mr. Knowles, on the brief).

PER CURIAM
 In response to an interlocutory appeal filed by the State,

we previously affirmed the trial court's order barring the State

from "retry[ing] defendant [Quaheem Johnson] on felony murder and

murder." State v. Johnson, 436 N.J. Super. 406, 409-10 (App. Div.

2014). We concluded that the improper termination statute,

N.J.S.A. 2C:1-9(d), barred defendant's retrial on those charges

because the trial court terminated the trial by accepting guilty

verdicts on lesser-included offenses when the jury was deadlocked

on the greater charged offenses. We remanded for sentencing and

the entry of a judgment of conviction. Id. at 426. The trial

court sentenced defendant to an aggregate term of thirty years,

subject to an eighty-five percent period of parole ineligibility

pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

 Defendant now appeals from his conviction, arguing:

 POINT I

 THE TRIAL COURT IMPROPERLY REPLACED
 A DELIBERATING JUROR WHEN THE RECORD
 DID NOT SHOW THAT THE JUROR HAD AN
 INABILITY TO CONTINUE; THE JUROR WAS
 NOT ASKED IF SHE COULD CANCEL HER
 TRIP AND, IN ANY EVENT, THE JUROR
 COULD RETURN THE NEXT MONDAY. U.S.
 CONST. AMENDS. VI, XIV; N.J. CONST.
 ART. I, PARAS. 9, 10.

 POINT II

 THE TRIAL COURT IMPROPERLY REFUSED
 TO ACT TO PRESERVE THE INTEGRITY OF
 THE DELIBERATIONS AFTER A CONFLICT

 2 A-1368-14T2
 ERUPTED AMONG THE JURORS AND A JUROR
 REFUSED TO ENTER THE JURY ROOM
 BECAUSE OF BULLYING. U.S. CONST.
 AMENDS. VI, XIV; N.J. CONST. ART. I,
 PARAS. 9, 10.

 POINT III

 THE TRIAL COURT IMPROPERLY
 INSTRUCTED THE JURORS THAT THEY
 COULD CONSIDER THE LESSER-INCLUDED
 CHARGES BEFORE DECIDING THE GREATER
 CHARGES AND THEREBY ENCOURAGED
 IMPROPER COMPROMISES. U.S. CONST.
 AMENDS. VI, XIV; N.J. CONST. ART. I,
 PARAS. 9, 10.

 POINT IV

 THE TRIAL COURT IMPROPERLY FAILED TO
 INSTRUCT THE JURORS THAT THEIR
 PARTIAL VERDICT WOULD BE FINAL AND
 THEREBY POTENTIALLY DEPRIVED
 JOHNSON OF A UNANIMOUS VERDICT.
 U.S. CONST. AMENDS. VI, XIV; N.J.
 CONST. ART. I, PARAS. 9, 10. (NOT
 RAISED BELOW).

 In our earlier opinion, we set forth the circumstances

underlying defendant's indictment and the specific charges made

against him. We need not repeat them at length here. Suffice it

to say, defendant was charged with various offenses arising from

his fatally shooting one victim during the course of two separate

robberies of necklaces from his victims, as well as pointing his

 3 A-1368-14T2
weapon at a police officer.1 Johnson, supra, 436 N.J. Super. at

410-11. Both the gun and chain that police recovered included DNA

evidence matching defendant and the victim, respectively and

multiple witnesses placed defendant at or near the scene of the

fatal shooting and robbery. Defendant's first trial ended in a

mistrial. At his second trial, when the jury began to deliver its

verdict, its foreperson informed the judge that it had not reached

a verdict as to several of the indictment's charges, but did as

to lesser-included offenses. The prosecutor did not object to the

court taking the verdicts, and defense counsel deferred to the

1
 In our prior opinion, we set forth the contents of the
indictment. We stated:

 Defendant was charged with murder, N.J.S.A.
 2C:11-3(a) (count one); felony murder,
 N.J.S.A. 2C:11-3(a)(3) (count two); armed
 robbery, as to [one victim], N.J.S.A. 2C:15-
 1(b) (count three); unlawful possession of a
 weapon, N.J.S.A. 2C:58-4, 39-5(b) (count
 four); possession of a weapon for an unlawful
 purpose, as to [the one victim], N.J.S.A.
 2C:39-4(a) (count five); armed robbery, as to
 [the other victim], N.J.S.A. 2C:15-1 (count
 six); possession of a weapon for an unlawful
 purpose, N.J.S.A. 2C:39-4(a) (count seven);
 aggravated assault, as to [a] police officer
 . . . , N.J.S.A. 2C:12-1(b)(4) (count eight);
 resisting arrest, N.J.S.A. 2C:29-2(a) (count
 nine); and possession of a weapon for an
 unlawful purpose as to [the police officer],
 N.J.S.A. 2C:39-4(a) (count ten).

 [Id. at 411.]

 4 A-1368-14T2
discretion of the court. As to the charges upon which the jury

reached a verdict, the judge accepted the verdict and polled the

jurors. As we previously described, the verdict sheet indicated

the jury's verdicts as follows:

 The verdict sheet reflected the verdict as
 "deadlocked" for counts one, murder; two,
 felony murder; three, armed robbery [of the
 first victim]; five, possession of a weapon
 for an unlawful purpose [as to the first
 victim]; eight, aggravated assault [of the
 police officer]; and ten, possession of a
 weapon for an unlawful purpose [as to the
 police officer]. The verdict sheet also
 reflected that, despite being deadlocked on
 the greater charged offenses, the jury
 rendered guilty verdicts as to aggravated
 manslaughter, N.J.S.A. 2C:11-4(a)(1),
 reckless manslaughter, N.J.S.A. 2C:11-
 4(b)(1),[2] and second-degree robbery, N.J.S.A.
 2C:15-1(a)(2) [all as to the first victim],
 which were all uncharged, lesser-included
 offenses that the verdict sheet instructed
 should only be considered if the jury found
 defendant not guilty of the charged offense.

 [Id. at 418-19.]

The jury reached a verdict as to the remaining counts, finding

defendant guilty of unlawful possession of a weapon as to the

first victim, armed robbery and possession of a weapon for an

2
 Although the verdict sheet contained in the record indicates
the jury found defendant guilty of this second-degree offense,
N.J.S.A. 2C:11-4(b)(1), the transcript of the jury's return of its
verdict makes no mention of this determination. We therefore
assume the unsigned copy of the verdict sheet provided by defendant
in his appendix is incorrect.

 5 A-1368-14T2
unlawful purpose as to the second victim, and resisting arrest by

flight and physical force or violence. Id. at 418.

 We turn first to Points III and IV of defendant's arguments,

which require that we revisit issues similar to those that guided

our consideration of the State's prior appeal. In our opinion,

we described how the judge who presided over the trial and properly

charged the jury as to its consideration of the charged and

uncharged offenses could not preside over jury deliberations

because of issues related to Hurricane Sandy. We also described

how the second judge, who presided only over jury deliberations,

responded to a question from the jury by improperly instructing

the jurors that they "may deliberate about the charges in any

order you wish to." Id. at 414. The judge did so even though the

parties' suggested "that the jury should be re-instructed to make

unanimous findings as to the greater, charged offense in each

count, before considering an uncharged, lesser-included offense,

if appropriate, in accordance with the verdict sheet's

instructions." Ibid. We concluded, "there is a substantial

likelihood that the verdict was the result of the second judge's

erroneous instructions to the jurors about the manner and sequence

in which they could consider the uncharged, lesser-included

offenses." Id. at 424. We have no cause to alter our conclusion

that the judge committed an error by so instructing the jury.

 6 A-1368-14T2
 Nevertheless, we discern no harmful error warranting a new

trial. R. 2:10-2 ("Any error or omission shall be disregarded by

the appellate court unless it is of such a nature as to have been

clearly capable of producing an unjust result . . . ."). While

we recognize that "'[a]ppropriate and proper charges to a jury are

essential for a fair trial,' and [that the Supreme Court has]

repeatedly held that 'erroneous instructions on material points

are presumed to be reversible error,'" State v. Carrero, __ N.J.

__, __ (2017)(quoting first State v. Daniels, 224 N.J. 168, 180,

(2016) then State v. Nelson, 173 N.J. 417, 446 (2002)), we conclude

that the erroneous instruction was not "material" because it did

not result in any possible harm to defendant or a violation of his

right to a fair trial. If anything, defendant benefited from the

court's error by the jury convicting him of aggravated manslaughter

rather than murder or felony murder. The only harm identified by

defendant was the possibility that, had the jury been properly

instructed by the second judge, it might have decided to convict

him of a lesser charge than aggravated manslaughter. We find this

contention to be based on unfounded speculation and without any

merit.

 We also find without merit defendant's contention that his

conviction should be reversed because the second judge failed to

ensure that the jury understood its verdict was final. Initially,

 7 A-1368-14T2
we observe that because defendant did not raise this argument to

the trial judge, it is reviewed for plain error. R. 2:10-2. "The

test for plain error is whether under the circumstances the error

possessed a clear capacity for producing an unjust result, that

is, one sufficient to raise a reasonable doubt as to whether the

error led the jury to a result it otherwise might not have

reached." State v. Czachor, 82 N.J. 392, 402 (1980) (citations

and quotation marks omitted). Under the circumstances of this

case, we conclude that there was no error.

 Here, there was no need for the judge to ensure the jury

understood its verdict was final before she accepted it because

the jury was not going to continue deliberations about charges for

which it had not reached a unanimous verdict. Had the judge not

accepted the verdict as to any of the deadlocked charges, while

accepting the verdicts on the remainder of the charges, with the

intention that the jury would be instructed to continue its

deliberations as to the deadlocked charges, such an instruction

and assurance would have been required. See State v. Shomo, 129

N.J. 248, 258 (1992) ("When the jury returns an interim partial

verdict, the court must ensure that the jury intended its partial

verdict to be final by specifically instructing the jury regarding

 8 A-1368-14T2
the verdict's finality.").3 There was no question here, however,

that the verdict on all counts, including the deadlocked verdicts,

were being accepted as final verdicts without either the court or

the jury contemplating further deliberations.

 We next address defendant's arguments in Points I and II

regarding the judge's management of juror issues. The first issue

3
 We previously summarized the facts in Shomo as follows:

 Shomo addressed the circumstance where a jury
 announced its verdict on the first two of four
 charges under consideration without being
 instructed on the finality of the partial
 verdicts. After hearing the partial verdicts,
 the court gave a modified [Czachor, supra, 82
 N.J. at 302] charge and released the jury for
 the evening. [Shomo, supra, 129 N.J. at 252].
 The next day, the judge received several
 notes. The first asked about guilt by
 admission and the second relayed that the jury
 was not going to reach a unanimous verdict on
 the remaining counts and asked "what is our
 next step?" Ibid. The judge also received a
 note from a juror indicating a desire to
 "change" his vote on the first count. Id. at
 253. Our Supreme Court held that before a
 court receives a partial verdict, it should
 unambiguously instruct the jury that a partial
 verdict will be considered final, not subject
 to reconsideration, even though the jury
 continues to deliberate on other counts. Id.
 at 258.

 [State v. Diferdinando, 345 N.J. Super. 382,
 394 (App. Div. 2001) (emphasis added), certif.
 denied, 171 N.J. 338 (2002).]

 9 A-1368-14T2
arose from a juror's inability to continue deliberations after the

interruption in deliberations caused by Hurricane Sandy. The jury

deliberated from October 22 through October 26, 2012. The trial

reconvened on Wednesday, November 7, 2012. At that time, juror

three did not return. She could have returned on the following

Monday. The second judge stated to the parties that her "intention

[was] to substitute the alternate for her unless the parties want

to proceed with less than [twelve] pursuant to [Rule] 1:8-2."4

Defense counsel objected to the substitution and would not

stipulate to less than twelve jurors. The judge explained that

she understood from the first judge that juror three had a

previously planned trip, but everyone believed that, but for the

hurricane, the trial would have been completed before the date

that she was scheduled to leave. The judge substituted an

alternate for the absent juror after considering that there had

been only "[a]t best" about two days of deliberations, the delay

caused by the hurricane forced the juror to miss the remainder of

the trial, and her absence "qualif[ied] as an inability to

continue." Defendant moved for a mistrial, which the judge denied.

The judge then instructed the jury as follows:

 The reason [juror three] was excused was
 entirely personal to her and it had nothing

4
 The rule permits the parties to agree that the number of jurors
be reduced to any number less than the required twelve jurors.

 10 A-1368-14T2
 to do with her views on this case, her
 relationship with the other members of the
 jury -- deliberating jury. Please do not
 speculate on the reason why that juror was
 excused.

 As of this moment, you are a new jury and you
 must start your deliberations over again. The
 parties have the right to a verdict . . .
 reached by [twelve] jurors who have had the
 full opportunity to deliberate from start to
 finish.

 The alternate juror has no knowledge of any
 earlier deliberations, therefore the new
 deliberating jury must start over at the very
 beginning of deliberations.

 Each member of the original deliberating jury
 must set aside and disregard whatever may have
 occurred and anything which may have been said
 in the jury room following [the first judge's]
 instructions to you.

 You must give no weight to any opinion
 expressed by [j]uror number [three] during
 deliberations before that juror was excused.

 Together as a new jury, you must consider all
 evidence presented at trial as part of your
 full and complete deliberations until you've
 reached your verdict.

 Defendant contends the court erred by not questioning juror

three prior to determining her ability to continue or asking the

juror about the purpose of the trip or the feasibility of

cancelling the trip. Defendant also argues that because juror

three could rejoin the trial the following Monday, the court should

 11 A-1368-14T2
not have determined that the juror was unable to continue, rather

the court should have delayed the trial.

 "We traditionally have accorded trial courts deference in

exercising control over matters pertaining to the jury." State

v. R.D., 169 N.J. 551, 559-60 (2001). Our "review of a trial

court's decision to remove and substitute a deliberating juror

because of an 'inability to continue,' pursuant to Rule 1:8-

2(d)(1)," and its denial of a motion for a mistrial based upon the

removal, is deferential, warranting reversal only if "the court

has abused its discretion." State v. Musa, 222 N.J. 554, 564-65

(2015); see also State v. Williams, 171 N.J. 151, 156 (2002).

Whether the court failed to properly exercise its discretion in

handling juror issues depends upon whether the court's actions

impaired defendant's right to a fair trial. "A defendant's right

to be tried before an impartial jury is one of the most basic

guarantees of a fair trial." State v. Brown, 442 N.J. Super. 154,

179 (App. Div. 2015) (quoting State v. Loftin, 191 N.J. 172, 187

(2007)). We discern no impairment of defendant's rights in this

case and therefore no abuse of the court's discretion.

 The substitution of a juror during deliberations is allowed

only as a last resort "[b]ecause juror substitution poses a clear

potential for prejudicing the integrity of the jury's deliberative

process." State v. Hightower, 146 N.J. 239, 254 (1996); State v.

 12 A-1368-14T2
Valenzuela, 136 N.J. 458, 468-69 (1994). Inasmuch as the essence

of jury deliberations is a collective sharing of views,

reconstituting a jury in the midst of deliberations "can destroy

the mutuality of those deliberations." Williams, supra, 171 N.J.

at 163. For that reason, Rule 1:8-2(d)(1) permits the removal and

substitution of jurors in criminal trials after deliberations have

begun "only in specifically defined circumstances." State v.

Jenknins, 182 N.J. 112, 123-24 (2004). Generally, a deliberating

juror can be excused only for reasons personal to the individual

juror, those that "do[] not pose a threat to the integrity or

independence of the deliberative process." Id. at 124. "[O]ur

courts have consistently upheld the substitution of an alternate

for a juror excused for personal reasons unrelated to the case."

State v. Ross, 218 N.J. 130, 147 (2014).

 In deciding whether to allow the substitution of a juror, a

court should consider multiple factors, including:

 the timing of the juror's departure, his or
 her explanation of the problem prompting the
 inquiry, and any communications from the jury
 that may indicate whether deliberations have
 progressed to the point at which a
 reconstituted and properly charged jury will
 be unable to conduct open and mutual
 deliberations.

 [Id. at 149.]

 13 A-1368-14T2
 Here, the missing juror's reason for being absent was already

known to the court based on information the juror shared when she

was selected to serve with the assumption that the trial would be

over when the juror had to leave on her planned trip. Nature did

not cooperate, curtailing deliberations and forcing the closing

of the courthouse due to the hurricane's impact. The juror did

not appear for continued service because of her planned trip, a

reason personal to her and not arising from the deliberative

process. The second judge reviewed the required considerations

and properly exercised her discretion by substituting the juror

with an alternate. See id. at 136-37.

 The next juror issue related to the second judge's handling

of a conflict between jurors. After the reconstituted jury began

deliberations, an argument arose between juror two and juror

eleven. A court officer informed the judge juror eleven "tried

to hand [him] a note, [juror two] refused and tried to take the

note from her, . . . at which point [juror eleven] said, . . .

touch me one more time, don't touch me." The officer told them

to "calm down." The jurors went back into the jury room. A half-

hour later, juror two approached the officer again and handed him

a note. The juror "refuse[d] to go back in the room." The officer

stated she said "she [did] not want to be ridiculed anymore."

 14 A-1368-14T2
 The judge had juror two brought into the courtroom, where she

asked her about the note and why she did not want to continue

deliberating. Juror two stated it was because "[t]hey're shouting,

they're yelling." The judge explained that things sometimes

"become heated" during deliberations. The judge stated she would

bring the jury into the courtroom and explain that "everyone must

be respectful to each other." In the meantime, juror two offered

to return to the jury room. The judge read the contents of the

note, which contained on one side a comment by juror eleven and

on the other a comment by juror two. The side written by juror

eleven stated, "[j]uror [two] is refusing to listen to the opinions

of the other jurors and is making up facts to reach her

conclusions."5

 The judge then brought out juror eleven, who stated juror two

was being unreasonable, was not considering the opinions of others,

was refusing to participate, and was "mak[ing] up stuff." Juror

eleven stated that "I think that we've all agreed that we should

take a break and come back and cool off and start over in the

morning." Defense counsel requested a modified Czachor/Allen

5
 The side of the note written by juror two stated "[t]here is
a problem with the jurors, they are ready to stop . . . ," at
which point the sentence stops.

 15 A-1368-14T2
charge.6 The judge stated she would not give the charge at that

time because it had not been "formally requested of [her]." She

stated the conflict was between "two jurors individually about

issues they were having personally," therefore "I'm not going to

give the modified [Czachor/Allen charge], but perhaps a break is

in order." The judge noted juror two "actually said she would

return . . . to the jury room." Defense counsel moved for a

mistrial, which was denied.

 The judge brought out the jury and stated,

 I . . . understand that things may be getting
 somewhat heated in the jury room and -- and
 these things happen in many cases. We
 understand that.

 We of course -- that's why I think this might
 be a good time to break for the day and come
 back fresh tomorrow . . . .

The next day, the jurors did not bring up the matter again and

continued their deliberations without incident.7

6
 Czachor, supra, 82 N.J. at 405 n.4 sets forth supplemental
trial instructions used in response to a jury deadlock, modifying
Allen v. U.S., 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 2d 528
(1896). The charge provides "an admonition to guard against
reaching an agreement that may do 'violence to individual
judgment,'" which serves as "a metaphor for what we now refer to
as 'bullying.'" State v. Dorsainvil, 435 N.J. Super. 449, 482
(App. Div. 2014) (quoting Czachor, supra, 82 N.J. at 405 n.4).
7
 In our previous opinion, although the issue was not raised in
the State's interlocutory appeal, we observed that

 16 A-1368-14T2
 Defendant asserts "the record rais[es] the specter of

bullying that could improperly influence the jurors" and contends

that "the court should have instructed the jurors on their duty

to deliberate," by giving a modified Czachor/Allen charge, which

is the charge "most applicable to a bullying situation like the

one in the present case." He argues this error warrants a new

trial. We disagree.

 Jury deliberations often become heated, and jurors may place

all sorts of pressures on each other in the course of

deliberations. See State v. Young, 181 N.J. Super. 463, 468 (App.

Div. 1981), certif. denied, 91 N.J. 222 (1982). It is not the

court's role to inquire into their deliberations, absent evidence

 [a]lthough not an issue before us, we note
 that the judge did not question the other
 jurors about whether the feuding jurors'
 dispute impacted their deliberations, or give
 any instructions to the jury about the dispute
 or take any further action to guarantee the
 integrity of the deliberations or the safety
 of the jurors. See [Dorsainvil, supra, 435
 N.J. Super. at 487] ("When violence intrudes
 into the deliberative process in any form and
 to any degree, a trial judge must take
 immediate action to investigate what occurred,
 not only to determine whether a defendant's
 right to a fair and impartial trial has been
 compromised, but also to ensure the safety and
 security of all involved").

 [Johnson, supra, 436 N.J. Super. at 415 n.9.]

 17 A-1368-14T2
of impropriety. While "[a] physical altercation between two or

more deliberating jurors constitutes an irreparable breakdown in

the civility and decorum expected to dominate the deliberative

process," Dorsainvil, supra, 435 N.J. Super. at 482, there is

simply no comparison between jurors exchanging caustic comments

and jurors engaging in physical violence in the jury room.

 Here, there was no evidence that the jurors' dispute resulted

in "[a] jury verdict tainted by such an inherently coercive and

chaotic environment[, rising to the level of] an affront to any

notion of civilized justice[, thereby preventing it from]

stand[ing] as a matter of law." Ibid. There were no reports of

physical violence by either juror and, after the break suggested

by one of the subject jurors and ordered by the judge, the jurors

continued to deliberate for an additional day before it announced

its verdict. While, as we previously observed, it would have been

better for the judge to question each of the other jurors to ensure

there was no problem, the two jurors evidently put aside their

differences and participated with the other jurors without further

incident. Moreover, here again, defendant has not demonstrated

that any alleged conflict between the two jurors prejudiced him,

causing an unjust result. To the contrary, as already discussed,

defendant was not convicted of the more serious charges he was

facing.

 18 A-1368-14T2
Affirmed.

 19 A-1368-14T2